IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

DONALD RAYMOND TURLEY, JR.,   )
      Plaintiff,   )
         )
v.   )   CIVIL ACTION NO. 2:14-17373
         )
CAROLYN W. COLVIN,   )
Acting Commissioner of Social Security,   )
      Defendant.   )

**PROPOSED FINDINGS AND RECOMMENDATION**

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI), under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f. By Standing Order entered June 3, 2014 (Document No. 4.), this case was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit Proposed Findings of Fact and Recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are the parties' cross-Motions for Judgment on the Pleadings (Document Nos. 13 and 16.), and Plaintiff's Reply. (Document No. 19.)

The Plaintiff, Donald Raymond Turley, Jr. (hereinafter referred to as "Claimant"), filed applications for DIB and SSI on April 9, 2012 (protective filing date), alleging disability as of February 15, 2012,[1] due to grand mal seizures.[2] (Tr. at 11, 237-45, 246-54, 269, 272.) The claims were denied initially and upon reconsideration. (Tr. at 118-21, 123-25, 128-30, 136-38, 140-42, 143-

---

[1] At the administrative hearing, Claimant amended his alleged onset date to April 1, 2013. (Tr. at 11.)

[2] On his form Disability Report - Appeal, dated January 9, 2013, Claimant asserted that his seizures led to bizarre behavior and alleged various learning disabilities and prostate problems as additional disabling impairments. (Tr. at 305.)

45, 147-49, .) On February 15, 2013, Claimant requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 150-51.) A hearing was held on January 6, 2014, before the Honorable William R. Paxton. (Tr. at 24-46.) By decision dated February 6, 2014, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 11-19.) The ALJ's decision became the final decision of the Commissioner on April 8, 2014, when the Appeals Council denied Claimant's request for review. (Tr. at 1-6.) Claimant filed the present action seeking judicial review of the administrative decision on June 2, 2014, pursuant to 42 U.S.C. § 405(g). (Document No. 2.)

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(I), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2014). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall

v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2014). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a) and 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). Those sections provide as follows:

> *(C) Rating the degree of functional limitation.* (1) Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.
> (3) We have identified four broad functional areas in which we will rate the

      degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listings of Impairments.
           (4) When we rate the degree of limitation in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1).[3] Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R. §§ 404.1520a(d)(2) and 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental

---

      [3] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04, provides that affective disorders, including depression, will be deemed severe when (A) there is medically documented continuous or intermittent persistence of specified symptoms and (B) they result in two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation , each of extended duration or (C) there is a medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities with symptoms currently attenuated by medication or psychosocial support and (1) repeated extended episodes of decompensation; (2) a residual disease process resulting in such marginal adjustment that a minimal increase in mental demands or change in the environment would cause decompensation; or (3) a current history of 1 or more years' inability to function outside a highly supportive living arrangement, and the indication of a continued need for such an arrangement.

impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the Claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The Regulation further specifies how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision issued by the administrative law judge and the Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(2) and 416.920a(e)(2).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he had not engaged in substantial gainful activity since the amended alleged onset date, April 1, 2013. (Tr. at 13, Finding No. 2.) Under the second inquiry, the ALJ found that Claimant suffered from "seizure disorder, obesity, chronic low back pain with disc space narrowing in the lumbar spine," which were severe impairments. (Tr. at 13, Finding No. 3.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 15, Finding No. 4.) The ALJ then found that Claimant had a residual functional capacity ("RFC") to perform light level work, as follows:

> [C]laimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except [he] can never perform climbing of ladders, ropes, or scaffolds but can occasionally perform climbing of ramps and stairs, balancing, kneeling, stooping, crouching, and crawling. The [C]laimant must avoid all exposure to hazards such as heights and machinery.

(Tr. at 15, Finding No. 5.) At step four, the ALJ found that Claimant was unable to perform his past relevant work. (Tr. at 18, Finding No. 6.) On the basis of testimony of a Vocational Expert ("VE")

taken at the administrative hearing, the ALJ concluded that Claimant could perform jobs such as a hand packer, price marker, and sorter/inspector, at the unskilled, light level of exertion. (Tr. at 18-19, Finding No. 10.) On this basis, benefits were denied. (Tr. at 19, Finding No. 11.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was born on April 15, 1960, and was 54 years old at the time of the administrative hearing, January 6, 2014. (Tr. at 18, 29, 246.) The ALJ found that Claimant had at least a high school education and was able to communicate in English. (Tr. at 18, 29, 271, 272-73.) In the past, he worked as an auto detailer. (Tr. at 18, 31, 43, 273.)

The Medical Record

The Court has considered all evidence of record, including the medical evidence, and discusses it below in relation to Claimant's arguments.

Claimant's Challenges to the Commissioner's Decision

Claimant alleges that the Commissioner's decision is not supported by substantial evidence because the ALJ erred in failing to weigh the opinion from consultative psychological examiner, Brenda Tebay, M.A., which resulted in an unsupported step two finding that Claimant's mental impairment was a non-severe impairment. (Document No. 13 at 8-12.) Claimant asserts that in performing the special technique for mental impairments, the ALJ relied upon select excerpts from Claimant's Function Report, dated July 1, 2012, which was completed by Claimant's wife. (Id. at 9.) Claimant asserts that the ALJ failed to cite any of his sworn testimony. (Id.) Claimant challenges the ALJ's findings as to each mental functional category because the ALJ relied upon only select portions of the Function Report and ignored other sections. (Id. at 9-10.) Additionally, Claimant asserts that the ALJ ignored Ms. Tebay's opinion which indicated mild deficits in immediate memory and severe deficits in recent memory, and her opinion that Claimant's prognosis was guarded. (Id. at 10.) Claimant contends that Ms. Tebay's opinion established more than minimal effects on his ability to perform work-related activities, and that it was error for the ALJ to not consider her opinion. (Id. at 10-11.)

In response, the Commissioner asserts that Claimant's argument is without merit because the ALJ did not deny his claims at step two. (Document No. 16 at 11-15.) Alternatively, the Commissioner contends that when an ALJ finds at least one impairment to be severe, the ALJ's failure to consider whether other impairments are severe is harmless error. (Id. at 11.) In any event,

the Commissioner asserts that substantial evidence supports the ALJ's decision that Claimant's mood disorder was not severe. (Id.) The Commissioner first asserts that Claimant failed to allege any mental impairment as disabling in his applications. (Id.) Similarly, Claimant did not report depression to any treating source until May 2012, but then refused Ms. Cummings' recommendation of medication and psychotherapy. (Id.) Additionally, Claimant did not receive any mental health treatment during the relevant period, April 1, 2013, through February 6, 2014. (Id. at 11-12.) Thus, objective evidence did not support a disabling mood disorder. (Id. at 12.)

Second, the Commissioner asserts that Claimant received limited and conservative mental health treatment. (Id. at 12.) The Commissioner notes that Claimant met with a social worker and a physician assistant once a month and took Zoloft. (Id.) Third, the Commissioner asserts that every treating source, as well as Claimant, reported that his mood disorder was related to his seizures. (Id.) His seizures however, were controlled when he was compliant with his medication. (Id.) If he complied, then there is a strong suggestion that his seizures and mood disorder would cease. (Id.) Fourth, the Commissioner asserts that Claimant failed to meet his burden of establishing disability during the relevant period. (Id. at 13.) Claimant's few subjective complaints were insufficient to establish disability. (Id.) The Commissioner asserts that Ms. Tebay's opinion was not entitled greater weight for several reasons. Ms. Tebay did not provide an opinion as to whether Claimant's mental impairment would affect his ability to work. (Id.) Ms. Tebay simply diagnosed a mood disorder, which the ALJ acknowledged. (Id.) Thus, the ALJ properly considered Ms. Tebay's diagnosis but properly concluded that Claimant's mood disorder caused only minimal limitations in his ability to work. (Id. at 14.)

Finally, the Commissioner asserts that although the ALJ specifically did not limit Claimant's

mental abilities, the VE identified unskilled, routine work. (Id.) The Commissioner notes that Claimant did not explain why he could not perform any of the jobs identified by the VE. (Id.) Thus, the Commissioner contends that Claimant failed to meet his burden that his mood disorder was a severe impairment that prevented him from working. (Id. at 14-15.)

Claimant asserts in reply that the harmless error standard does not apply because the ALJ failed to consider non-severe impairments at later steps of the sequential analysis, which precluded all consideration of the severe impairments that he excluded at step two. (Document No. 19 at 1.) He further asserts that the ALJ's brief mention of Ms. Tebay's opinion at step two, his implied rejection of that opinion, and his reliance upon Claimant's report completed at the initial levels of review, was in error. (Id. at 2.) Furthermore, Claimant asserts that the ALJ failed to assign any weight to Ms. Tebay's opinion, contrary to the Regulations. (Id. at 3.) Claimant asserts that pursuant to SSR 96-6p, the ALJ must assign weight to the opinions of consultative examiners. (Id.) Accordingly, Claimant contends that the ALJ's error is reversible. (Id.)

Claimant also alleges that the ALJ's decision is not supported by substantial evidence because the ALJ failed to consider all of his medically determinable impairments and other evidence in assessing his RFC. (Document No. 13 at 12-13.) Claimant asserts that the only limitations assessed by the ALJ were postural and environmental limitations. (Id. at 12.) He asserts that the ALJ failed to include in his RFC assessment any limitations resulting from Claimant's mood disorder, frequent urination, benign prostate hypertrophy, or his illiteracy. (Id.) He asserts that the ALJ even failed to mention his illiteracy. (Id. at 12-13.) Thus, Claimant contends that the ALJ failed to conduct a function by function assessment of Claimant's work-related limitations. (Id.) Accordingly, Claimant asserts that the ALJ did not pose proper hypothetical questions to the VE, and therefore,

9

could not rely on the VE's testimony. (Id. at 13.)

In response, the Commissioner asserts that the evidence supported the ALJ's finding that Claimant's benign prostate hypertophy was non-severe in that he failed to report any further urinary problems following his surgery in October 2012. (Document No. 16 at 15-16.) Thus, the ALJ properly determined that there were no limitations to account for regarding this impairment. (Id. at 17.) Regarding illiteracy, the Commissioner asserts that there was no evidence to support an assertion that he was illiterate. (Id.) Claimant indicated that he could read, write, and understand English and he repeatedly told physicians that he could read and write. (Id.) Thus, the ALJ did not consider illiteracy in formulating his RFC. (Id.) Finally, regarding Claimant's mood disorder, the Commissioner asserts that this impairment was discussed regarding Claimant's first allegation. (Id. at 15.) Accordingly, the Commissioner contends that the ALJ's RFC assessment fully accounted for all of Claimant's credibly established impairments and was supported by substantial evidence. (Id.)

Analysis.

1. Severe Impairment and Opinion Evidence.

Claimant first alleges that the ALJ erred in failing to weigh Ms. Tebay's psychological opinion, which resulted in an incorrect step two finding. (Document No. 13 at 8-12.) To be deemed disabled, a claimant must have an impairment or combination of impairments which is severe, meaning that it "significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c); 416.920(c) (2014). Basic work activities are the abilities and aptitudes necessary to do most jobs, including: physical functions such as sitting and standing; capacities for seeing, hearing and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and

dealing with changes in a routine work setting. Id.; §§ 404.1521(b)(1)-(6); 416.921(b)(1)-(6). Conversely, "[a]n impairment can be considered as 'not severe' only if it is a *slight abnormality* which has such a *minimal effect* on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Evans v. Heckler, 734 F.2d 1012, 1014 (4th Cir. 1984) (emphasis in original); see also SSR 85-28 (An impairment is considered not severe "when medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered."); SSR 96-3p (An impairment "is considered 'not severe' if it is a slight abnormality(ies) that causes no more than minimal limitation in the individual's ability to function independently, appropriately, and effectively in an age-appropriate manner."). An inconsistency between a claimant's allegations about the severity of an impairment and the treatment sought is probative of credibility. See Mickles v. Shalala, 29 F.3d 918, 930 (4th Cir. 1994). As discussed above, the determination whether a claimant has a severe impairment is made at the second step of the sequential analysis.

"RFC represents the most that an individual can do despite his or her limitations or restrictions." See Social Security Ruling 96-8p, 61 Fed. Reg. 34474, 34476 (1996). Pursuant to SSR 96-8p, the RFC assessment "must be based on all of the relevant evidence in the case record," including " the effects of treatment" and the "limitations or restrictions imposed by the mechanics of treatment; e.g., frequency of treatment, duration, disruption to routine, side effects of medication." Looking at all the relevant evidence, the ALJ must consider the claimant's ability to meet the physical, mental, sensory and other demands of any job. 20 C.F.R. §§ 404.1545(a), 416.945(a) (2012). "This assessment of your remaining capacity for work is not a decision on whether you are disabled, but is

used as the basis for determining the particular types of work you may be able to do despite your impairment(s)." Id. "In determining the claimant's residual functional capacity, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of her impairments." Ostronski v. Chater, 94 F.3d 413, 418 (8th Cir. 1996).

Opinions on a claimant's Residual Functional Capacity are issues that are reserved to the Commissioner. The Regulations state that:

> We use medical sources, including your treating source, to provide evidence, including opinions, on the nature and severity of your impairment(s). Although we consider opinions from medical sources on issues such as whether your impairment(s) meets or equals the requirements of any impairment(s) in the Listing of Impairments in appendix 1 to subpart P of part 404 of this chapter, your residual functional capacity . . . or the application of vocational factors, the final responsibility for deciding these issues is reserved to the Commissioner.

See 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2) (2012).

> In determining what a claimant can do despite his limitations, the SSA must consider the entire record, including all relevant medical and nonmedical evidence, such as a claimant's own statement of what he or she is able or unable to do. That is, the SSA need not accept only physicians' opinions. In fact, if conflicting medical evidence is present, the SSA has the responsibility of resolving the conflict.

Diaz v. Chater, 55 F.3d 300, 306 (7th Cir. 1995) (citations omitted).

The Regulations state that opinions on these issues are not medical opinions as described in the Regulation dealing with opinion evidence (20 C.F.R. §§ 404.1527(a)(2) and 416.927(a)(2)); rather, they are opinions on issues reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e) and 416.927(e). For that reason, the Regulations make clear that "[w]e will not give any special significance to the source of an opinion on issues reserved to the Commissioner. . . ." Id. §§ 404.1527(e)(3) and 416.927(e)(3). The Regulations further provide that "[f]or cases at the

Administrative Law Judge hearing or Appeals Council level, the responsibility for deciding your residual functional capacity rests with the Administrative Law Judge or Appeals Council." See 20 C.F.R. §§ 404.1545 and 416.946 (2012). However, the adjudicator must still apply the applicable factors in 20 C.F.R. § 416.927(d) when evaluating the opinions of medical sources on issues reserved to the Commissioner. See Social Securing Ruling ("SSR") 96-5p, 61 FR 34471, 34473 (1996).

Social Security Ruling 96-5p makes a distinction between an RFC assessment, which is "the adjudicator's ultimate finding of 'what you can still do despite your limitations,'" and a "'medical source statement,' which is a 'statement about what you can still do despite your impairment(s)' made by an individual's medical source and based on that source's own medical findings." Id. SSR 96-5p states that "[a] medical source statement is evidence that is submitted to SSA by an individual's medical source reflecting the source's opinion based on his or her own knowledge, while an RFC assessment is the adjudicator's ultimate finding based on a consideration of this opinion and all the other evidence in the case record about what an individual can do despite his or her impairment(s)." Adjudicators "must weigh medical source statements under the rules set out in 20 C.F.R. § 416.927, providing appropriate explanations for accepting or rejecting such opinions." Id. at 34474.

At step two of the sequential analysis, the ALJ acknowledged Ms. Tebay's evaluation and diagnosis of mood disorder, but concluded that there was no evidence that the impairment caused more than minimal limitations in his ability to perform basic mental work activities, and therefore, was a non-severe impairment. (Tr. at 14.) The ALJ then assessed Claimant as having mild limitations in maintaining activities of daily living, social functioning, concentration, persistence, or pace and no episodes of decompensation of extended duration. (Id.) The ALJ then assessed a RFC that

13

contained no specific limitation for any mental functional deficits. (Tr. at 15.)

The medical evidence demonstrates that Ms. Tebay performed a consultative evaluation of Claimant on November 7, 2012. (Tr. at 14, 584-89.) Claimant reported that he did not drive due to a seizure disorder. (Tr. at 584.) Claimant reported memory problems, feelings of sadness and hopelessness, feelings of helplessness and guilt, worry, frustration and agitation, feelings of gloom and doom, tearful affect, and a poor attitude toward the future. (Tr. at 585.) On mental status exam, Ms. Turley observed that Claimant was calm and cooperative, exhibited clear and coherent speech with normal tone, had a broad affect and neutral mood, and was oriented. (Tr. at 586.) He admitted to suicidal thoughts and a safety plan, his thought processes and content were normal, his judgment and concentration were within normal limits, his immediate memory was mildly deficient, recent memory was severely deficient, and remote memory was normal, as was his social functioning. (Id.) Ms. Tebay diagnosed mood disorder due to general medical seizures, grand mal seizures. (Id.) She opined that his prognosis was poor. (Id.)

The other medical evidence established that Claimant refused recommended medication and psychotherapy for depressive symptoms reported in May 2012. (Tr. at 552-53.) Claimant reported to a social worker, Marie Carney, in June 2012, that he had become more irritable since he started having seizures and quit his job. (Tr. at 538.) Ms. Carney noted that Claimant often forgot to take his seizure medication. (Tr. at 539.) She educated him on the importance of medication compliance and determined that Claimant suffered from major depression, recurrent, moderate, due to general medication condition (seizure disorder) and recommended that he start medication and receive counseling. (Tr. at 539-40.) Claimant met with Ms. Carney again in October 2012, at which time he reported fleeting suicidal thoughts without plan. (Tr. at 494.) Claimant reported that his seizure

medications were working, but that he was concerned about his prostate and urinary retention. (Tr. at 495.)

In October 2012, Claimant also met with Kelly Cummings, PA-C. (Tr. at 496.) Ms. Cummings noted that Claimant was tolerating his Zoloft well without side effects. (Id.) Claimant reported no seizure activity since he last was seen. (Id.) He reported symptoms of depression, including having been snappy and irritable. (Id.) Despite having reported depression, Ms. Cummings noted that depression screening was negative. (Tr. at 497.) She observed on exam that Claimant was alert and oriented, maintained good eye contact, was talkative and had spontaneous speech, and had fair insight and adequate judgment. (Id.) She assessed dysthmia. (Id.) On December 3, 2012, Claimant again reported that he was compliant with his Zoloft, which he tolerated well without side effects. (Tr. at 479.) Claimant also reported that he was irritable, had decreased memory and concentration, and was tearful. (Id.) Mental status exam however, revealed that Claimant was alert and cooperative, had a dysphoric mood and blunted affect, and had fair insight and adequate judgment. (Id.) Depression screening was positive. (Id.) On December 14, 2012, Claimant reported increased feelings of anger, depression, anxiousness, increased anger, and fleeting suicidal ideations. (Tr. at 481.) These symptoms were triggered by stress from his boss at work. (Id.) Ms. Carney recommended that Claimant find a new work environment as he was being bullied which triggered memories of his childhood and young adulthood. (Id.)

In view of the foregoing scant evidence of mental impairments, the undersigned finds that the ALJ's decision that he did not have any severe mental impairments is supported by the substantial evidence of record. Although Claimant has been diagnosed with a mood disorder and depression, the record did not suggest any significant limitations arising from these impairments.

15

Claimant's mental conditions were addressed sporadically throughout the record and addressed primarily by a social worker and physician assistant. He did not receive any mental health treatment during the relevant period. The only consultative evaluation regarding Claimant's mental impairments was by Ms. Tebay. Although the ALJ did not give any weight to Ms. Tebay's "opinion," the undersigned finds that other than opining that Claimant's prognosis was poor, Ms. Tebay did not provide any opinions. Rather, she diagnosed a mood disorder due to Claimant's seizures. Because Ms. Tebay did not provide any opinion as to Claimant's mental impairments and any resulting limitations, the undersigned finds that the ALJ did not commit any error in failing to assign weight to Ms. Tebay's "opinion." Thus, the medical evidence was void of any opinion evidence as to Claimant's mental impairments and the ALJ, therefore, considered Claimant's self-reports and testimony.

With the assistance of his wife, Claimant completed a form Function Report, dated July 1, 2012. (Tr. at 14, 295-302.) Claimant reported that he had memory loss, was combative with supervisors and coworkers, and had feelings of worry and being overwhelmed. (Tr. at 295.) He indicated that his wife reminded him to care for his pets and himself. (Tr. at 296.) He stated that he could not do anything stressful and that his wife also had to remind him to take his medications. (Tr. at 296-97.) He indicated that he was unable to count change because he got confused. (Tr. at 299.) Claimant reported that he sometimes visited with friends, but primarily stayed at home because he did not like to be around people. (Id.) He further reported that he considered himself difficult to get along with, had frequent mood changes, and was argumentative. (Tr. at 300.) He considered himself a failure and always worried about himself and his family. (Id.) Claimant reported that he had a poor attention span and easily was distracted. (Id.) Finally, Claimant reported that he did not like change

16

and was unable to do new things due to his memory problems. (Tr. at 301.)

In addressing the functional limitations from Claimant's mental impairments, the ALJ noted that Claimant performed personal care, helped care for his grandchildren, prepared simple meals, walked, and watched television. (Tr. at 14.) Additionally, Claimant spent time with others and did not require anyone to accompany him on outings, except to drive. (Id.) The ALJ therefore, assessed mild limitations in the three broad mental functional categories. (Id.) Neither the medical nor subjective evidence of record suggested limitations greater than the mild limitations assessed by the ALJ. Claimant's mood disorder primarily was triggered by seizures, for which Claimant failed to take the recommended medication. Claimant's seizures and resulting mood disorder symptoms were controlled when he was compliant with his seizure medication. Consequently, the ALJ's decision not to assess any mental limitations in the RFC assessment is supported by the substantial evidence of record.

2. RFC Assessment.

Claimant first alleges that the ALJ erred in assessing his RFC because he failed to set out all of Claimant's limitations in a function-by-function assessment pursuant to SSR 96-8p. (Document No. 10 at 6-9.) In Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015), the Fourth Circuit observed that SSR 96-8p "explains how adjudicators should assess residual functional capacity. The Ruling instructs that the residual functional capacity 'assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions' listed in the regulations." It is only after the function-by-function analysis has been completed that RFC may "be expressed in terms of the exertional levels of work." Id. The Court noted that the ruling must include a narrative as to how the evidence supports each conclusion, citing

specific medical facts and non-medical evidence. Id. The Fourth Circuit further noted that a per se rule requiring function-by-function analysis was inappropriate "given that remand would prove futile in cases where the ALJ does not discuss functions that are 'irrelevant or uncontested." Id. Rather, the Fourth Circuit adopted the Second Circuit's approach that "remand may be appropriate...where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." Id. (*Citing* Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)); see also, Ashby v. Colvin, Civil Action No. 2:14-674 (S.D. W.Va. Mar. 31, 2015).

Although the ALJ specifically did not engage in a function-by-function analysis, the undersigned finds that the evidence failed to establish any limitations resulting from Claimant's illiteracy and benign prostate hypertrophy. The medical evidence demonstrated that Claimant's prostate hypertrophy improved with surgery in October 2012, and that Claimant had no further problems with increased urination following surgery. (Tr. at 473-77, 480.) Regarding his alleged illiteracy, the evidence reveals that Claimant had a high school education, was able to read and write, and was able to understand and speak English. (Tr. at 271-72.) Remand in this case therefore, would be futile. Accordingly, the undersigned finds that the ALJ's RFC assessment regarding these two non-severe impairments is supported by the substantial evidence of record.

For the reasons set forth above, it is hereby respectfully **PROPOSED** that the District Court confirm and accept the foregoing findings and **RECOMMENDED** that the District Court **DENY** the Plaintiff's Motion for Judgment on the Pleadings (Document No. 13.), **GRANT** the Defendant's Motion for Judgment on the Pleadings (Document No. 16.), **AFFIRM** the final decision of the Commissioner, and **DISMISS** this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable John T. Copenhaver, Jr., United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have three days (mailing/service) and then fourteen days (filing of objections) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155, 106 S.Ct. 466, 475, 88 L.Ed.2d 435 (1985), reh'g denied, 474 U.S. 1111, 106 S.Ct. 899, 88 L.Ed.2d 933 (1986); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.), cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.Ed.2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Copenhaver, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to send a copy of the same to counsel of record.

Date: August 31, 2015.

_____
R. Clarke VanDervort
United States Magistrate Judge